## MUSKEGON BOILER WORKS et al. v. TENNESSEE VALLEY IRON & R. CO.

(District Court, M. D. Tennessee, Nashville Division. May 16, 1921.)

No. 64.

1. **Creditors' suit ⬢⇒59—Complainant entitled to costs, including counsel fees.**

   One jointly interested with others in a common fund, who brings and prosecutes a suit for its preservation and administration, as in a general creditors' suit is equitably entitled to reimbursement of his costs, including reasonable fees of his counsel, to be paid either out of the fund itself or by proportionate contribution from those receiving the benefit of the litigation, but such counsel fees may be awarded directly to his solicitors.

2. **Creditors' suit ⬢⇒59—Allowance of fees to complainant's counsel.**

   Fees allowable to counsel for complainant in a creditors' suit include reasonable compensation for services rendered after the appointment of a receiver in discharge of his duty, acting in behalf of all creditors standing in a similar position to complainant, to prosecute the suit to final distribution and to defend and otherwise protect the fund; but such fees are to be based only on the fund applicable to claims of creditors of the same class as complainant, and the fund on which others have superior liens cannot be subjected to such payment.

3. **Creditors' suit ⬢⇒59—Basis of allowance of counsel fees.**

   Where counsel for complainant in a creditors' suit are also employed by interveners under contracts for special fees, while the general allowance to them from the fund recovered of fees for their services in recovering the same is not to be diminished by the total of such special fees, the amount of the claims of the separate clients from whom they receive special compensation is to be taken into consideration by way of a general deduction in determining the total fund on the basis of which their fees should be fixed.

In Equity. Suit by the Muskegon Boiler Works and others against the Tennessee Valley Iron & Railroad Company. On exceptions to

⬢⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

report of special commissioner on allowance of fees to complainants' solicitors. Exceptions sustained in part.

Fowler & Fowler, of Knoxville, Tenn., and Dan. E. McGugin, of Nashville, Tenn., for exceptant.

Joseph Higgins and L. R. Campbell, both of Nashville, Tenn., for solicitors.

SANFORD, District Judge. The Special Commissioner has reported the reasonable fee of plaintiffs' solicitors, Messrs. Campbell and Higgins to be $40,000; to which report exceptions have been filed. After careful consideration of the arguments and briefs of counsel, my conclusions, briefly stated, are:

[1, 2] One jointly interested with others in a common fund who brings and prosecutes a suit for its preservation and administration, as in a general creditors' suit, is equitably entitled to reimbursement of his costs, including reasonable fees of his counsel, to be paid either out of the fund itself or by proportionate contribution from those receiving the benefit of the litigation. Trustees v. Greenough, 105 U. S. 527, 532, 26 L. Ed. 1157; Central Railroad & Bkg. Co. v. Pettus, 113 U. S. 116, 122, 5 Sup. Ct. 387, 28 L. Ed. 915; Hobbs v. McLean, 117 U. S. 567, 582, 6 Sup. Ct. 870, 29 L. Ed. 940; Harrison v. Perea, 168 U. S. 311, 325, 18 Sup. Ct. 129, 42 L. Ed. 478; Central Trust Co. v. Ingersoll (6th Circ.) 87 Fed. 427, 429, 31 C. C. A. 41; Burden Co. v. Ferris Co. (5th Circ.) 87 Fed. 810, 31 C. C. A. 233; Central Trust Co. v. Light Co. (2d Circ.) 233 Fed. 420, 421, 147 C. C. A. 356; Buell v. Lumber Corporation (D. C.) 201 Fed. 762, 768; 22 Cyc. 1361. Such counsel fees may, however, be awarded directly to the plaintiffs' solicitors. Railroad v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915, supra; Harrison v. Perea, 168 U. S. at page 325, 18 Sup. Ct. 129, 42 L. Ed. 478. This is substantially the established rule in Tennessee. Moses v. Ocoee Bank, 1 Lea (Tenn.) 398; Elec. Light Co. v. Gas Co., 99 Tenn. 371, 388, 42 S. W. 19. Such reasonable fee includes compensation for services rendered by counsel for the plaintiff after the appointment of a receiver, in discharge of his duty, acting in behalf of all creditors standing in a similar position to the plaintiff, to prosecute the suit to final distribution and to defend and otherwise protect the fund. Burden Co. v. Ferris Co. (5th Circ.) 87 Fed. at page 812, 31 C. C. A. 233, supra. Such fees, however, are to be based only on the fund applicable to claims of creditors of the same class as the plaintiff, and the fund on which others have liens superior to such claims cannot be subjected to such payments. Buell v. Lumber Corporation (D. C.) 201 Fed., supra, at page 769.

[3] A difficult question arises, however, as to the controlling principles in fixing the fees of plaintiff's solicitor when he represents not only the plaintiff in the general suit, but also intervening creditors of the same class, under special employment, and is to receive fees from his separate clients in addition to the general fee allowed by the court. The exceptant here insists that the amount of reasonable fees to which plaintiffs' solicitors would otherwise be entitled are to be diminished by the amount of the fees which they have received or will receive

from such separate clients. No authority, however, is cited support-
ing this contention, in this precise form. And I think it clear upon
principle that as the plaintiffs' solicitors as counsel for such separate
clients are necessarily charged with some special duties in reference to
the claims of such clients, including the filing of their claims, atten-
tion to their proper allowance, and, ordinarily the receiving and pay-
ing over thereof, their reasonable fees for conducting the general pro-
ceedings in behalf of all general creditors should not be diminished
by the full amount of the fees which they are to receive from indi-
vidual clients, including compensation for services rendered such
clients specially, as distinguished from those rendered to all cred-
itors generally. On the other hand, however, it is clear that in de-
termining the reasonable compensation of plaintiff's solicitors, the
amount of the individual claims as to which they have been specially
employed under contracts for separate fees, is to be taken in consid-
eration. This question is ruled by Central Railroad v. Pettus, 113
U. S. at page 127, 5 Sup. Ct. 387, 28 L. Ed. 915, supra, in which it
was held that in fixing the general compensation of plaintiff's solici-
tors, there should be excepted from the amount of the claims with
reference to which such compensation should be fixed, the claims of
the plaintiffs and other unsecured creditors who had special contracts
with such solicitors for fees or had settled with them. While this
case did not involve the matter of claims as to which no special con-
tract or settlement had been made as to the amount of the fees, the
principle upon which the decision is based applies, in my judgment,
with equal force, to all claims which plaintiffs' solicitors specially rep-
resent and as to which they are to receive separate fees from their
individual clients. So also as shown in 22 Cyc. 1361, note 24, it was
held in Ohio Valley Bank v. Cummings & Co., 21 Ohio Cir. Ct. R. 782,
that in fixing the fees of plaintiffs' attorneys chargeable to the general
fund the court should take into consideration the fact that the attor-
neys represented general creditors who were "also liable to them for
fees in the matter." This conclusion also appears to be sound upon
principle, independently of authority, since the solicitors for the plain-
tiff, representing also individual creditors who have employed them
specially owe a duty to them in looking after the suit, the contesting
of unauthorized claims and the like, as well as a general duty in
behalf of all creditors in whose behalf the suit is filed; and the serv-
ices which they render in the prosecution of the suit are rendered in
the discharge of their twofold duty to general creditors in the conduct
of the suit and to their individual clients. Thus, in the present case,
it is conceded that plaintiffs' solicitors are in some instances to receive
and have received from individual clients a ten per cent. fee. Clearly
it was not contemplated that the services to be rendered such clients,
on a ten per cent. basis, should be merely the filing of the individual
claims and matters arising in reference to them alone, without any
general attention to the case to such extent as was necessary to pro-
tect the interests of such individual clients. And if plaintiffs' solici-
tors had represented not only the plaintiffs in the general creditors'
suit but also all the other general creditors in the case, they would, in

conducting the suit, have been discharging practically the same duty as plaintiffs' solicitors which they owed to their individual clients, constituting the entire body of creditors; and manifestly if they were first to be paid a reasonable fee for their entire services out of the general fund and then were to receive the same aggregate amount of fees from their individual clients separately, they would receive in effect double compensation for the same services. It is impossible to lay down any general rule in this matter, as each case must rest upon its own facts, further than to say that the relative amount of duty dicharged in behalf of general creditors and of separate clients would seem to depend approximately upon the pro rata amount of the creditors whom the solicitors represent specially as compared with the total amount of the claims which they represent generally; and this is, I take it, the reason underlying the ruling in Central Railroad v. Pettus.

I therefore conclude, in accordance with the rule stated in Central Railroad v. Pettus, and for the reasons above stated, that while the amount of fees to which plaintiffs' solicitors would otherwise be entitled is not to be diminished, ipso facto, by the amount of fees which they are to receive from all their clients separately, the amount of the claims of separate clients from whom they are to receive or have received special compensation is to be taken into consideration by way of a general deduction in determining the total fund on the basis of which their fees should be fixed.

The following are the chief considerations in support of the claim of the plaintiffs' solicitors: (a) This suit brought into court a very large fund for the benefit of general creditors, which otherwise would probably in large measure have been dissipated. (b) The plaintiffs' solicitors gave careful, constant, able and efficient attention to the conduct of the suit and to the details of the many matters arising therein from time to time. (c) The litigation has been of very great benefit to general creditors.

The principal considerations tending to a reduction in the amount of fees of plaintiffs' solicitors are, on the other hand, these: (a) The litigation appears to have been a friendly litigation instituted, not as an antagonistic suit, but, as it inferentially appears, with the approval and consent of the defendant company itself; the defendant's counsel having in fact suggested the selection of plaintiffs' solicitors, furnished them with the bulk of the information on which the bill was filed, and the defendant having admitted the allegations of the bill and consented to the appointment of a receiver. (b) There were no difficult or complicated matters litigated in the suit itself, other than the suits defended by Mr. DeWitt, one of the receivers, who acted as their counsel; the conduct of the suit having principally involved attention to details of the claims filed, the presentation of a claim against the government and negotiations and settlements between different classes of creditors as to their claims and plan of reorganization, and the investigation of accounts and matters connected with the making of the special master's report, most of which were settled outside of court and did not involve any active litigation in the court. The

principal disputed matters as to which the plaintiffs' solicitors gave attention outside of court was the claim against the government in behalf of the special class of creditors known as the government creditors, as to which there was a special employment of counsel, including these solicitors, by the government creditors directly interested. (c) While plaintiffs' solicitors gave diligent attention to these matters, the fundamental and principal work connected therewith, as shown by the testimony, was done by Mr. DeWitt, who gave close and most unremitting attention to these details of these matters, and by the special master, who gave painstaking attention to the many claims and accounts in connection with the making of his report. (d) Furthermore the plaintiffs' solicitors not only represented the creditors filing the bill, whose claims aggregate a very large sum, but also many other creditors, whose claims aggregated a very large percentage of all general creditors, with some of whom plaintiffs' solicitors had special contracts as to fees, and from whom, as it appears, that they have received, or are to receive separately, large compensation, either in money or in stock in the reorganized corporation, in some cases equal to ten per cent.

After careful consideration of these and other matters appearing in the record, I conclude, under all the circumstances, bearing in mind the rule stated in Central Railroad v. Pettus, that as insisted in the first exception to the Special Commissioner's report, the reasonable fee for plaintiffs' solicitors to be awarded as a charge upon the fund as part of the costs of the cause, does not exceed the sum of $20,000 in the aggregate; that is, $10,000 to each of the two solicitors. The first exception to the Special Commissioner's report will accordingly be sustained.

The second exception, to the effect that this compensation should be diminished by the sums received or to be received by plaintiffs' solicitors from their individual clients, must be overruled.

I may add that I have not overlooked the fact that the plaintiffs' solicitors, both at the bar and in their brief, offer to abate their claim for fees to the extent of the claim of the exceptant, that is, as I construe it, to abate their claim proportionately to the amount of the exceptant's claim to the total general claims. This does not, however, affect the action to be taken. The exception operates, in law, in my judgment to the benefit of all general creditors alike. And even if this were not so, I am of opinion that when the question of the reasonableness of fees allowed as part of the costs, is brought to the attention of the court, it should, independently of any exceptions to the master's report, and in the discharge of its own duty, fix and allow such fees only as are in its judgment reasonable and proper.

A decree will be entered in accordance with this opinion.